# JAMES A. WHITCOMB

## *vs.*

## THE NATIONAL EXCHANGE BANK OF BALTI-MORE, a Corporation.

*Negotiable instruments: renunciation of rights; must be in
writing.   Negotiable Instruments Act:
object and interpretation.*

Under section 141 of Article 13 of the Code of 1912, the
renunciation by the holder of a negotiable instrument of his
right against any party to the instrument, can be proved only
by the holder's written declaration (unless the instrument be
delivered up, etc.).                    p. 615

The term "renunciation," as used in section 141 of Article
13 of the Code of 1912—"The Negotiable Instruments Act"—
describes the act of surrendering a right or claim without rec-
ompense, but it can be applied with equal propriety to the relin-
quishment of a demand, upon an agreement supported by a
consideration.                    p. 615

The term as there used includes the release of a claim by
virtue of an accord and satisfaction, as well as a gratuitous
waiver of liability.                    p. 616

The object of the "Negotiable Instruments Act" was to se-
cure uniformity in the laws governing negotiable instruments,
and in order that the object may be realized, differences as to
judicial construction should be avoided, and the language of
the statute should be given its full effect to which it is legiti-
mately entitled, while unnecessary distinctions and qualifica-
tions restricting the scope and meaning of the terms of the
Act should be avoided. p. 616

Section 138 of the Article points out and designates the acts
which discharge the contract, but it does not prescribe the
character of proof by which acts must be established, and is
not inconsistent with section 141, which refers, in part, to the
mode of proof as to such particular methods. p. 618

*Decided June 25th, 1914.*

Appeal from the Superior Court of Baltimore City.
(Bond, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe,
Burke, Thomas, Pattison, Urner and Constable, JJ.

*Charles F. Carusi* (with whom was *Semmes, Bowen &
Semmes* on the brief), for the appellant.

*G. Ridgely Sappington* and *Charles G. Baldwin,* for the
appellee.

Urner, J., delivered the opinion of the Court.

The Negotiable Instruments Act, forming Article 13 of
the Code of Public General Laws, provides by Section 141
as follows: "The holder may expressly renounce his rights
against any party to the instrument, before, at, or after its

maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon." In view of this provision the Court below declined to submit for determination as an issue of fact the question whether there had been an *oral* agreement for the release of the defendant as an endorser of the promissory note in suit.

The judgment below was in favor of the National Exchange Bank of Baltimore City, the present appellee, for a balance, including interest, of $3,331.90 on a promissory note of the Roxbury Distilling Company for the original sum of $9,000.00, dated October 13, 1908, payable on demand to the appellee's order, and endorsed by the appellant and others before delivery. It is shown by the proof that this note was given as a substitute for a time note to the bank which had been executed by the same parties. At the inception of the last mentioned note the Distilling Company had deposited with one of the endorsers, for their common indemnification, eighteen bonds of the company of the par value each of $1,000. After the substituted demand note had been in existence for about a year, it was reduced by a payment of $5,000, and the bonds just referred to were delivered to the bank as collateral security for the remainder of the indebtedness. This occurred in November, 1909. Interest was paid on the note to December 31st of that year, after which no further payments of any kind were made until August, 1913, when a dividend of $335.95 upon the collateral bonds was paid by the receivers of the Distilling Company, and this was followed by another of $135.31 from the same source on the note itself in December, 1913. The defendant endorser testified that the sum paid on the note in 1909 represented the amount realized by the Distilling

Company from a sale of $5,000 worth of whiskey to the defendant which was made in pursuance of an arrangement for such an application of the proceeds. The money required for this purchase was obtained by the defendant upon a mortgage of a portion of his property. It was through his action that the bonds held as an indemnity for the endorsers were delivered to the bank as collateral. The defendant states that these results were accomplished by him under an agreement with Mr. Waldo Newcomer, President of the National Exchange Bank, that in consideration of this service the defendant should be released from further liability on his endorsement. This testimony is met by Mr. Newcomer's express denial that there was any such agreement; but the defendant claims the right to have the disputed question of fact submitted, under a prayer for that purpose, to the finding of the Court sitting as a jury.

The theory advanced by the defendant is that the provision we have quoted from the Negotiable Instruments Act applies only to renunciations made without consideration, and that it has no reference to releases of liability under agreements which operate by way of accord and satisfaction. In view of the general policy of the statute we are unwilling to restrict its application by adopting the construction suggested. Assuming that the transaction described by the defendant, and upon which he relies, would furnish a sufficient basis for an accord and satisfaction with respect to his liability as an endorser, we are of the opinion that under the plain and comprehensive language of the Act the only mode of proving the alleged release is by a renunciation in writing. Undoubtedly the word "renunciaton," as used in the section quoted, appropriately describes the act of surrending a right or claim without recompense, but it can be applied with equal propriety to the relinquishment of a demand upon an agreement supported by a consideration. It is defined as meaning: "The act of renouncing or giving up something possessed," *Webster's International Dictionary;* "The act

of giving up a right," *Bouvier's Law Dictionary* (15th ed.);
"The legal act by which a person abandons a right acquired,
but without transferring it to another," *Century Dictionary.*
These definitions are practically the same as those given in
the same authorities for the word "release," as follows: "A
giving up or relinquishment as of a right or claim," *Webster;*
"The giving up or abandoning a claim or right to the person
against whom the claim exists or the right is to be exercised
or enforced," *Bouvier;* "A surrender of a right," *Century.*
Both the terms thus similarly defined are classed as syn-
onyms of *"relinquishment."* There can be no doubt that the
word we are interpreting is sufficiently broad in its meaning
to include the release of a claim by virtue of an accord and
satisfaction as well as a waiver of liability, made gratu-
itously. If we were to accept the defendant's theory, it is
evident that the result would be to restrict the term to a por-
tion only of the transactions to which it is capable of being
applied. We see no occasion to thus narrow its effect, and
there is cogent reason for duly regarding its plain and com-
prehensive significance. The statute in which it is used was
enacted upon the recommendation of the Commission repre-
senting Maryland in the movement to promote uniformity
of legislation. The same measure has been adopted as a
part of the statutory law of a number of the States of the
Union. The primary purpose of its enactment was to secure
uniformity in the law governing negotiable instruments.
*Vanderford* v. *The Farmers and Mechanics' National Bank
of Westminster,* 105 Md. 164. In order that this object
may be realized it is important that differences of judicial
construction as to its application should be avoided so far as
may be reasonably practicable. This end can best be attained
by allowing to the language of the statute the full effect to
which it is legitimately entitled. The surest means of pro-
ducing an opposite tendency would be the attempt to intro-
duce possible but unnecessary distinctions and qualifications

for the purpose of restricting the scope and meaning of the terms employed in this well considered legislation.

The Supreme Court of Washington has had occasion to construe the uniform Negotiable Instruments Act, which is in force in that State, in reference to the identical question we have now under review. In *Baldwin* v. *Daly,* 41 Wash. 416, 83 Pac. 724, it was held that an agreement by the payee of a note to release the surety, while supported by a sufficient consideration, was ineffective because the renunciation was not in writing as required by the Act. After quoting the section already set forth in this opinion the Court observed: "This plainly provides that the renunciation of a debt must be in writing where the debt is evidenced by a negotiable instrument, and, if 'renunciation' is used therein in the sense of 'release,' there can be no question that the appellant must show a written renunciation in order to prove the allegations of his answer. Counsel for the appellant argues that the word is used in a sense different from that of release, and that, while a renunciation must be by a writing, a release may be proved by parol. But we cannot think the statute permits of this distinction. The words, 'the holder may expressly renounce his right against any party to the instrument,' must refer to the release and discharge of a party to the instrument from his obligation to pay it, else they can have no legitimate meaning." This ruling was followed in the later case of *Pitt* v. *Little* (Wash.), 108 Pac. 941. In *Leask* v. *Dew,* 102 App. Div. (N. Y.) 529; affirmed in 184 N. Y. 599, the provision in question was applied to a gratuitous relinquishment, as was also the case in *Edwards* v. *Walters,* L. R. 2 Ch. 157, (1896) and *Francis* v. *Bruce,* L. R. 44 Ch. Div. 627 (1890), where a similar clause in the English Bills of Exchange Act was considered.

It is contended that the construction we are adopting is inconsistent with Section 138 of the statute, which specifies the acts by which a negotiable instrument is discharged, as follows: "1. By payment in due course by or on behalf of

the principal debtor; 2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; 3. By the intentional cancellation thereof by the holder; 4. By any other act which will discharge a simple contract for the payment of money; 5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right." The argument is that inasmuch as accord and satisfaction is a method of discharging a simple contract for the payment of money and admits of proof by parol at common law, and as Section 138 does not require that an extinguishment of the debt by any of the methods it mentions shall be evidenced in writing, it could not have been intended by Section 141 that the provision as to the proof of "renunciation" should apply to such a defense as the present. It is to be noted that Section 138 is confined to a designation of *acts* which discharge the instrument, and does not purport to prescribe the character of proof by which they must be established. Section 141 deals specifically with the subject of discharge by renunciation and provides in effect that an extinguishment of liability to be thus accomplished must be evidenced in writing, unless the instrument is delivered up to the party primarily liable. The earlier section relates generally to *causes* of discharge, while the later refers in part to the mode of proof as to a particular method of producing such a result. To the extent that acts which "will discharge a simple contract for the payment of money," as mentioned in Section 138, may be included in the category of "renunciations," the intent of the statute is that they must be proven by the holder's written declaration. There is no such inconsistency with Section 138 involved in the construction we have placed on Section 141 as to require or justify the restriction of its scope and operation within narrower limitations than its plain terms import.

*Judgment affirmed, with costs.*