## JONES v. WETTLIN, ET AL.
(No. 1487; October 30, 1928; 271 Pac. 217)

332

*A. C. Allen* and *O. N. Gibson,* for appellant.

334

*M. C. Burk,* for respondent.

*A. C. Allen* and *O. N. Gibson,* in reply.

BLUME, Chief Justice.

Edith A. Jones, the plaintiff, brought this action against Elizabeth Wettlin and Herbert G. Wettlin, defendants. The court dismissed the plaintiff's action and rendered judgment for costs in favor of the defendants. The parties will be referred to herein as in the court below.

Plaintiff set forth twenty causes of action; the last will be referred to again later, and we shall for the present consider only the first nineteen causes of action. These were brought upon notes dated September 20, 1918, and due thirty days apart, commencing with about October 1, 1918. The notes were all given in connection with the purchase by the Wettlins of laundry equipment in the town of Riverton, and were secured by a chattel mortgage upon the property purchased, the mortgage being duly filed of record in Fremont County, Wyoming. The defendants pleaded payment and settlement of these notes by an assumption by one Hopkins of the indebtedness evidenced thereby. Mrs. Wettlin testified that subsequent to the execution of the notes, she, as owner of the laundry equipment, sold it to one Hopkins with the consent of Squier Jones, husband of the plaintiff; that at that time Hopkins assumed the indebtedness still due on the notes in suit and executed new notes to Squier Jones to take the place thereof; that the notes of Hopkins were accepted by Squier Jones in substitution and that it was agreed that the notes in suit should be surrendered; that this was not, however, done at the time, and that Squier Jones subsequently claimed that he made a mistake in the computation of interest thereon amounting to about forty or fifty dollars. The foregoing transaction, if true, constituted what is technically known as novation. 29 Cyc. 1131, 1136. The amount still due upon the notes in suit at that time does not distinctly appear, but judging from the testimony in regard to the amount still remaining

due on the same indebtedness at a later time, it must have been approximately $2,000 or somewhat more. The same laundry equipment was subsequently re-purchased by Mrs. Wettlin and other notes, in turn, were substituted for the Hopkins' notes, but it is unnecessary, for the purposes of this case, to mention these subsequent transactions further, for if there was in fact a novation as above mentioned, that would extinguish the former indebtedness, according to the rules of the common law. 29 Cyc. 1136. The acceptance of a note of a third person unconditionally and with the agreement that it shall be in full satisfaction of the amount due on previous notes held by the creditor, operates as payment. 8 C. J. 572. Nor is it essential that the old notes should be surrendered or cancelled. 8 C. J. 574; Reeves v. Letz, 143 Mo. App. 196, 128 S. W. 246; Epstein v. Gradowitz, (Cal. App.) 243 Pac. 877. We think that there is sufficient evidence in the record to sustain the claim that the notes of Hopkins were taken in full satisfaction of the notes of the defendants. The testimony of Mrs. Wettlin stands uncontradicted. In addition to that, Squier Jones, husband of the plaintiff, knew all the facts; he was not produced as a witness by the plaintiff, and there is no explanation in the record of the reason thereof. This raised a presumption against the plaintiff. Studebaker Corporation of America v. Hanson, 24 Wyo. 222, 157 Pac. 582; Hines v. Sweeney, 28 Wyo. 57, 201 Pac. 165, 1018. And we think also that there is sufficient evidence to warrant the trial court in finding that the plaintiff authorized the transaction or ratified it. Her claim that Squier Jones, who represented her in the transaction, was not her duly authorized agent, cannot be sustained. The testimony shows that she personally released the chattel mortgage which was security for the notes in suit. She testified that she had no recollection of having executed this release. We have no reason to doubt that she told the truth in this, but she ought not

to complain that this very circumstance may have been instrumental in persuading the trial judge that, as claimed by the defendants, she intrusted all of her affairs absolutely to her husband. She herself admitted that Squier Jones represented her in the transaction now in question, and that he had more or less authority to represent her at other times. There was also testimony to the effect that Squier Jones transacted all of the business in which the plaintiff was interested. In view of these facts, the finding of the court that she was bound by the actions of her husband cannot be disturbed, unless it is on account of the matter which we shall now proceed to consider.

2. Counsel for the plaintiff claim that she was not bound by the transaction above mentioned, because the release of the defendants was neither evidenced in writing, nor were the notes delivered up, and that either one or the other of these acts was necessary under the provisions of Section 4055, Wyo. C. S. 1920, (Sec. 122, Ch. 43, Negotiable Instruments Law), in order to discharge the notes in suit. That Section reads as follows:

"The holder may expressly renounce his rights against any party to the instrument before, at or after its maturity. An absolute and unconditional renunication of his rights against the principal debtor made at or after the maturity of the instrument, discharges the instrument, but a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing unless the instrument is delivered up to the person primarily liable thereon."

There are several cases which sustain the claim made herein by counsel for the plaintiff. Baldwin v. Daley, 41 Wash. 416, 83 Pac. 724; Pitt v. Little, 58 Wash. 355, 108 Pac. 941; Whitcomb v. National Exchange Bank, 123 Md. 612, 91 Atl. 689; Manley v. Beam, 190 N. C. 659, 130 S. E. 633; Misouri State Life Ins. Co. v. California State

Bank, 202 Mo. App. 347, 216 S. W. 789. It was said in Whitcomb v. National Exchange Bank, supra, that the foregoing Section of the Uniform Negotiable Instruments Law should be construed so as to give the language used a natural meaning, and that while the word "renunciation" properly describes the act of surrendering a right without recompense, it may with equal propriety be applied to the relinquishment of a demand upon an agreement supported by a consideration. This view is perhaps not surprising, for even in England, where the term "renunciation" seems to apply only to a gratuitous relinquishment of a claim, as will hereinafter be more fully shown, Lord Ellenbrough applied the term to a transaction based upon a consideration, as well as to a gratuitous relinquishment of a claim, as shown by Parker v. Lee, 2 Stark 228, 171 Eng. Rep. 629, where he said:

"If he does not expressly renounce all claim upon the security, it still remains valid in point of law. If the party were to forego a bill in equity on that account, it would be a good consideration for a renunciation of part of his claim, but the ground of renunciation must be distinctly proved."

In arriving at the true intent of Section 4055, supra, we must bear in mind other provisions of the Negotiable Instruments Law, particularly Section 4052, Wyo. C. S. 1920 (Sec. 119, Neg. Inst. Law), which provides the manner in which the principal debtor may be discharged and which, after enumerating the methods of payment and cancellation, further states that it may be effected "by any other act which will discharge a simple contract for the payment of money." Now such a simple contract may, among other methods, be discharged at common law by novation, as already indicated, and by accord and satisfaction (see 1 C. J. 545), and that, too, without writing or delivery of the instrument evidencing the previous indebtedness. That was the rule of the law merchant,

and this rule remains in force in all cases not provided for in the Negotiable Instruments Law. Section 4129, Wyo. C. S. 1920 (Sec. 196, Neg.`Inst. Law). Unless, therefore, the Section on renunciation was intended to be read in connection with Section 4052, supra, and was intended to control it, the methods of discharge under these Sections must be considered as independent of each other, and as referring to different situations. Section 4052, supra, among other things, as already stated, shows that a note or bill may be discharged by payment, and if the Section on renunciation controls Section 4052 when the discharge is by novation or accord and satisfaction, it would seem that it would control that Section as well when the note is in fact paid by money, and this would seem to lead to the absurd result that payment cannot be shown, unless the fact thereof is in writing or unless the note or bill is delivered. These and perhaps other matters have caused some of the courts to inquire into the origin of the Section on renunciation, which was not done in the cases heretofore mentioned. And the result at which these courts have arrived may be summarized as follows: There was in force an English rule taken from the French law, in accordance with which a bill or note might be discharged by accord without satisfaction; that is to say, the payment of the note or bill or part thereof might be waived without consideration, as shown by Foster v. Dawber, 6 Exch. 839 (1851); Whatley v. Tucker, 1 Camp. 35, 170 Eng. Rep. 867; Parker v. Lee, 2 Stark 228, 171 Eng. Rep. 629; Cook v. Lister, 13 C. B. & S. 543, 143 Eng. Rep. 215, 235; Williston on Contracts, Sec. 1632; that when the British Bill of Exchange Act was enacted in 1882, the term ''renunciation'' was used in a technical sense and was applied only to a gratuitous waiver of a claim; that the term ''release'' was not used to describe such a situation because, technically speaking, release means a discharge under seal; that though such renuncia-

tion could, previous to the enactment of the Negotiable Instruments Law, be made by parol, it was deemed best to modify that rule, conforming it to the Scotch law, and to require such gratuitous waiver to be shown in writing, unless the note or bill were delivered up; that the Negotiable Instruments Law adopted in the various states in this country are all modeled after the British Act above mentioned and that the Section on renunciation means what it was intended to mean in Great Britain, although the English rule above mentioned was never adopted in this country, and that the only effect upon our law is that a renunciation, with the meaning given it above, if in writing, is now valid in this country, though made without consideration. See Williston on Contracts, Section 1833, with a note stating that the rule as laid down in Baldwin v. Daley, supra, is unsound.

Now let us see whether these conclusions are justified. In Parker v. Lee, supra, it was stated, as already said, that the term "renunciation" may be applied to a gratuitous waiver, as well as to a waiver based upon a consideration. According to the dictionary, and as stated in Whitcomb v. National Exchange Bank, supra, the term may be applied to both situations. In Whatley v. Tucker, supra, it is true, the term was used in a case which involved a gratuitous waiver of a note, but without indicating that it might not also be used in connection with a waiver based on a consideration. And in Foster v. Dawber, supra, the main case stating the English rule above mentioned, the word "renunciation" is totally lacking. The term is, unfortunately, neither defined in the Negotiable Instruments Law, nor are there any decisions prior to the enactment of that law which gave it that technical, restrictive meaning. Hence if such is its meaning, as used in that law, that fact must be gathered from circumstances and inferences. We have already stated one circumstance by stating the result which would en-

sue, if the section on renunciation may be said to control Section 4052, supra. We shall proceed to consider others.

The author on Bills and Notes in 8 C. J. 615 says that the statutory provision as to renunciation above mentioned is "except as to the clause requiring the renunciation to be in writing, but an enactment of the common law rule," evidently making reference to the gratuitous waiver of a bill or note. The author cites Sweeting v. Halse, 9 B. & C. 365, 17 Eng. C. L. 167, 109 Eng. Rep. 139, decided in 1829; Whatley v. Tucker, supra, decided in 1817; Cook v. Lister, supra, decided in 1863; Foster v. Dawber, supra, decided in 1851, and Ralli v. Denniston, 6 Exch. 483, 4 Eng. Rul. Cas. 506, decided in 1851. Reference to these cases is perhaps not a happy one, for while they or most of them have reference to a gratuitous waiver of a bill or note, the statement in the text in 8 C. J. 615 is contained in none of them and could not well be, in view of the fact that they were all decided before the enactment of the Negotiable Instruments Law in 1882. The statement in the text was perhaps made in view of the fact that the term "renunciation" was used in Whatley v. Tucker, supra, a case of gratuitous waiver, and in view of the statement in Northern Crown Bank v. International Electric Company, 24 Ont. L. 57, Ann. Cas. 1912 A. 472, where the court said incidentally that the term "renunciation" means the discharge of a bill or note by accord without satisfaction, the court evidently having in mind the English rule above mentioned. Perhaps as good authority as we know for the restrictive meaning here under discussion is furnished by Sir M. D. Chalmers, draughtsman of the British Bill of Exchange Act, who says (as stated in McGlynn v. Grandstrom, *infra*):

"The words requiring the renunciation in writing were added in committee. That altered the English law to bring it into accordance with the Scotch law. At common law, a contract cannot be discharged by accord with-

out satisfaction. The special rules as to bills and notes partially embraced in this Section seem to have been imported into the law merchant from French law."

Persuasive, too, is the fact that Byles on Bills (18th Ed.) a British text book, clearly, though not expressly, limits the term to a waiver without consideration. That view is also clearly taken by Judge Russell of Nova Scotia in his work on bills (2nd Ed.) 421, where he says among other things:

"It still remains law that no consideration is necessary for such a discharge, but in order to be effective a renunciation must be in writing unless the bill is delivered up to the acceptor."

We have made a somewhat thorough examination of the British cases and have been unable to find any in which it has even been attempted to apply the Section of the Negotiable Instruments Law on renunciation to a situation in which, previous to the enactment of that act, the principles of novation and accord and satisfaction applied. That, perhaps, is not without its significance in view of the forty-six years during which the Uniform Negotiable Instruments Law has been in existence in Great Britain. And it may be mentioned in this connection, that unless the restrictive meaning here under discussion is correct, that Section on renunciation might clearly have been invoked in the case of Punamshand v. Temple, 2 K. B. (1911) 330. In that case a third person paid the notes of a debtor with an amount less than that which was due. The money remitted was retained by the creditor; the notes were not, however, delivered up, and it was held in a suit on the notes that there was an accord and satisfaction, which was binding upon the creditor. The case is very much like that of Bradley-Metcalf Co. v. McLaughlin, *infra*. The Section on renunciation was not invoked, and while the case, therefore, affords no positive

evidence, it at least affords negative evidence that the term "renunciation" bears, in the British mind, the restrictive meaning here under discussion. And there is a Canadian case distinctly to that effect. Lyons v. Smith, 70 Dom. L. R. 101, in which the court held that renunciation means a waiver or discharge without consideration, and has no application when the discharge is by other methods known to the law merchant.

The view taken by the Canadian case is taken by a number of courts in the United States; Hall v. Wichita State Bank & Trust Co., (Tex. Civ. App.) 254 S. W. 1036; Lockhart State Bank v. Baker, (Tex. Civ. App.) 264 S. W. 566; Gorin v. Wiley, 215 Ill. App. 541; Bradley-Metcalf Co. v. McLaughlin, 87 Okla. 34, 208 Pac. 1032; Epstein v. Gradanitz, supra; McGlynn v. Grandstrom, (Minn.) 210 N. W. 893; Nelson v. Hudson, (Mo. App.) 299 S. W. 1111.

An extensive discussion of the subject is contained in Hall v. Wichita State Bank & Trust Co., supra, the first case giving the subject careful consideration, and also in McGlynn v. Grandstrom, supra. Both of these cases review the historical setting in which the Section on renunciation came to be embodied in the Negotiable Instruments Law. In the case of Nelson v. Hudson, supra, it was said:

"Plaintiff on motion for rehearing insists that our opinion in this case is in conflict with the decision of the Kansas City Court of Appeals in Engle v. Brown, 202 Mo. App. 345, 216 S. W. 541. It is true that our opinion is not in accord with the decision in that case. But it is in accord with the decision of that court in the later case of Central Missouri Trust Co. v. Taylor, 289 S. W. 658, which, we think, repudiates the ruling in the former case. It is manifest that our statute requiring a renunciation to be in writing is not concerned with a release or discharge by novation or by any other contract or agreement founded upon a valuable consideration. Renunciation imports the gratuitous abandonment or giving up of a right. It does not import a release or discharge for a valuable consideration."

We are accordingly of the opinion that Section 4055, Wyo. C. S. 1920, has no bearing on the case at bar, and does not apply to a discharge of a note by novation, accord and satisfaction, and other methods known to the law merchant in which the discharge is based upon a valid consideration.

3. The twentieth cause of action herein was based upon a note dated August 4, 1921, for $1,450, drawing 10% interest per annum, and which was not in any way connected with the transaction heretofore mentioned. The note was secured by certain real estate in Riverton and was duly foreclosed. The only defense to this note is that it was satisfied by the foreclosure sale and that there is no evidence in the record that there was anything due thereon. This claim, however, is not supported by any evidence. The property was bought in at the foreclosure sale for the sum of $1,490.00, leaving still due upon the note the sum of $276.34. The note was introduced in evidence, the proceedings on the foreclosure were shown by affidavits in accordance with the provisions of Sections 4640 to 4642, Wyo. C. S. 1920. The latter Section provides that these affidavits and the record thereof and certified copies of such record shall be presumptive evidence of the facts therein contained. Judgment should accordingly have been rendered for the plaintiff for the amount still due upon this note, namely, for the sum of $425.19, plus 10 per cent attorney's fees.

We find no merit in the contention that the judgment herein was a nonsuit. The court found against the plaintiff on the merits and "that the plaintiff take nothing by the suit," and then adjudged that the "defendant have and recover of the plaintiff judgment dismissing plaintiff's cause of action." It is clear that the judgment was upon the merits, whatever defects, if any, there may be in the words used.

The judgment of the District Court is modified accordingly, and the cause remanded with directions to the trial court to enter judgment herein in favor of the plaintiff in the sum of $452.10 as of date August 4, 1927, and as so modified the judgment is affirmed. The costs herein will be divided equally between the parties, except as to the briefs, which will not be taxed.

*Modified and Affirmed.*

KIMBALL and RINER, JJ., concur.