Argued October 24, 1930; reversed February 3, 1931

# PORTLAND IRON WORKS *v.* SIEMENS ET AL.
(295 P. 463)

*O. A. Neal,* of Portland (E. L. Elliott, of Klamath Falls, on brief) for appellant.

*Wallace McCamant,* of Portland (D. V. Kuykendall, of Klamath Falls, and McCamant, Thompson & King, of Portland, on the brief) for respondents.

BELT, J. One day before being barred by the statute of limitations, plaintiff commenced this action to recover upon a promissory note for $4,426.05, dated April 14, 1921, due one year after date. The instrument was executed by J. W. Siemens in favor of Saw Mill Engineering & Construction Co. On August 10, 1921, it was endorsed by Saw Mill Engineering & Construction Co. and F. Hill Hunter to the plaintiff. The execution, endorsement and nonpayment of the note are admitted. J. W. Siemens, maker of the note, made no appearance and default judgment was taken against him. The controversy, therefore, concerns only the liability of the endorser, F. Hill Hunter, who was operating under the assumed trade name of Saw Mill Engineering & Construction Co.

Defendants, in answer to the complaint and by way of counterclaim, allege:

"That the indebtedness alleged by plaintiff to be represented by the promissory note set up in the complaint was incurred by the Saddle Mountain Lumber Company, an Oregon corporation, in which J. W. Siemens, defendant herein, was the principal stockholder, and that such indebtedness was originally secured by a mortgage on the property of the said Saddle Mountain Lumber Company which was ample and adequate to secure the payment thereof but that at the special instance and request of the plaintiff herein, the defendants, Saw Mill Engineering & Construction Co. and F. Hill Hunter, released said mortgage as security for said indebtedness and that the

plaintiff herein took and accepted in lieu of such security certain stock of the Klamath Mint Company, an Oregon corporation, and a promissory note signed by James O'Keefe in the sum of five thousand and no-100 ($5,000) dollars, payable to Lucinda Siemens, but owned by defendant, J. W. Siemens, and in consideration of the releasing of said mortgage security which the said defendants answering herein held, plaintiff promised and agreed to relieve the said defendants of all responsibility as endorsers of the note set forth in plaintiff's amended complaint herein and look to the defendant, J. W. Siemens, and the security which was substituted by J. W. Siemens for that held by the plaintiffs answering herein."

It is further alleged, in substance, that plaintiff relied and acted upon the agreement to release the endorsers from liability until convinced that the acceptance of different security was about to result in a financial loss, whereupon it wrongfully and unlawfully demanded from the defendants payment of the amount due on the note. Defendants also aver that full recovery could have been had on the mortgage security had it not been released in reliance upon plaintiff's agreement to accept other security. On account of this alleged breach of contract defendants claim damages for the amount due on the note.

As a further and separate answer the defendants reiterate the facts as above set forth and pray that plaintiff be estopped from maintaining this action. As a third further answer and cross bill in equity the defendants again allege the facts as heretofore related and, in addition, aver that they have no adequate remedy at law. They conclude with the prayer "that the court enjoin plaintiff from the further prosecution of this action against said defendants and that said note be surrendered to the court and that the endorse-

ment of said defendants thereon be cancelled except to the extent necessary to transfer title to said note to the plaintiff and that said defendants have such other and further relief as may seem meet in equity." In the reply plaintiff denied the new matter alleged in the answer.

The trial court, over the objection of plaintiff, proceeded to hear the case in equity, calling a jury to sit in an advisory capacity. The court took the case under advisement and thereafter entered findings of fact, conclusions of law, and a decree perpetually enjoining the plaintiff from proceeding further at law to recover upon the note.

Plaintiff asserts that the decree should be reversed for any one of four reasons, viz:

(1) That equity has no jurisdiction for the reason that defendants have a complete and adequate remedy at law, assuming there is competent proof of agreement to release them from liability as endorsers;

(2) That such oral agreement, if any was made, would, under the negotiable instrument law, be invalid;

(3) That defendants have failed to show by a preponderance of the evidence that any agreement was made to relieve them as endorsers on the note;

(4) That the agent of the plaintiff, with whom such agreement is alleged to have been made, had no express or implied authority so to act.

██ Defendants utterly fail to allege any facts affording ground for equitable relief. Counsel, in oral argument, with commendable frankness, practically conceded that defendants had a plain and adequate remedy at law. Unquestionably, if the defendant Hunter had obtained a valid release, such could be shown in an action at law: *Wood v. Young,* 127 Or. 235 (271 P. 734); *Woods v. Wikstrom,* 67 Or. 581 (135 P. 192).

■ The next question is whether an endorser of a negotiable instrument may establish by parol evidence a release which is based upon a valuable consideration, where the instrument has not been delivered up to the person primarily liable thereon. It is admitted that the note was never delivered up to its maker, the defendant, J. W. Siemens. The answer to the question hinges upon the construction of § 122 of the Negotiable Instruments Act (Oregon Code 1930, § 57-804), which provides:

"The holder may expressly renounce his rights against any party to the instrument before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor, made at or after the maturity of the instrument, discharges the instrument; but a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

Defendants contend that "renunciation" as used in the above act means discharge of the note by the unilateral act of the holder without any consideration therefor, and that the provision requiring the renunciation to be in writing applies only where there has been a gratuitous release or surrender of the holder's right in the instrument. It is urged that the above section must be construed in the light of section 119 of the Negotiable Instruments Act (Oregon Code 1930, § 57-801) pertaining to methods of discharging negotiable instruments, subdivision 4 of which provides that an instrument may be discharged "by any other act which will discharge a simple contract for the payment of money" and that when so considered no writing is necessary under the facts in this case.

Section 119 of the Negotiable Instruments Act enumerates the "acts" by which an instrument may be discharged. True, subdivision 4 thereof is broad enough to include novation and accord and satisfaction, but section 122 provides specifically the method of proof where a note is discharged by the holder who renounces his interests therein. Under the plain and ordinary acceptance of the language of section 122 a renunciation or release of interest in an instrument by a holder can be accomplished only in the manner specified, unless the instrument has been delivered up to the person primarily liable thereon. We see no reasonable basis for the distinction suggested between gratuitous renunciations and those supported by a consideration, so far as the requirement of a writing is concerned. Certainly none can be found in the language of the act itself.

But it is argued that section 119 does not require any of the "acts" therein mentioned to be evidenced by a writing and that since the oral agreement under review is sufficient to discharge a simple contract for the payment of money, it therefore follows that such section controls.

Conceding that a renunciation based on a consideration is embraced within subdivision 4 of the above section, it does not follow that we should give no force nor effect to the plain and specific requirements of section 122 that such particular method of discharge shall be evidenced by writing. The contention of defendants is thus answered in the well considered case of *Whitcomb v. National Exchange Bank*, 123 Md. 612 (91 Atl. 689):

"The earlier section relates generally to *causes* of discharge, while the latter refers in part to the mode of proof as to a particular method of producing such a

result. To the extent that acts which 'will discharge a simple contract for the payment of money', as mentioned in section 138 [same as § 119] may be included in the category of 'renunciations', the intent of the statute is that they must be proven by the holder's written declaration. There is no such inconsistency with section 138 involved in the construction we have placed on section 141 as to require or justify the restriction of its scope and operation within narrower limitations than its plain terms import.''

In support of the conclusion that the renunciation or release as alleged herein cannot be predicated on oral evidence, also see: *Baldwin v. Daly,* 41 Wash. 416 (83 P. 724) ; *Pitt v. Little,* 58 Wash. 355 (108 P. 941) ; *Manley v. Beam,* 190 N. C. 659 (130 S. E. 633) ; Daniel on Negotiable Instruments (6th Ed.), § 1290. To the contrary see: *McGlynn v. Granstrom,* 169 Minn. 164 (210 N. W. 897) ; *Jones v. Wettlin,* 39 Wyo. 331 (271 P. 217, 69 A. L. R. 840) ; *Nelson v. Hudson,* 221 Mo. App. 211 (299 S. W. 1111) ; *Hall v. Wichita State Bank* (Tex. Civ. App.), 254 S. W. 1036. While the authorities are conflicting, we think the conclusion stated herein is in keeping with the better reasoned cases and that it will tend towards greater stability and certainty in negotiable instruments.

It is unnecessary to consider the question as to whether, in fact, an agreement was made to release the defendant Hunter from liability as an endorser, but we have no hesitancy in stating that, in our opinion, the weight of the evidence fails to substantiate the findings of the lower court. It is highly improbable that experienced business men would, in matters of such importance, fail to reduce their agreement to writing. There are many facts and circumstances, unnecessary to relate in view of the legal deductions

made, which strongly support the contention of the plaintiff that it did not enter into the agreement as alleged in the answer.

We see no legal or equitable defense to this action as disclosed by the record. It would be idle to remand the cause for a new trial in view of the fatal defect that the alleged renunciation was founded on an oral agreement. The decree is reversed and judgment is hereby entered in favor of the plaintiff against the defendants in the sum of $4,426.05, with interest thereon from April 14, 1921, at 8 per cent per annum, and for the further sum of $750 as attorney fees for the prosecution of this action.

BEAN, C. J., BROWN and KELLY, JJ., concur.