O’NIELL, Chief Justice
 

 (dissenting).
 

 ■I favor the granting of a rehearing in this case because it appears to me that, in the opinion that was rendered on the original hearing, we did not observe the distinction between fhe
 
 discharging
 
 of a debt represented by a negotiable instrument and the
 
 renouncing
 
 of a claim represented by a negotiable instrument. It is said in the original opinion rendered in this case:
 

 “It is contended by plaintiff that the discharge of a negotiable instrument must be in writing unless the instrument is delivered up to the person primarily liable thereon.”
 

 The plaintiff in this case does not contend that the
 
 discharge
 
 of a negotiable instrument must be in writing unless the instrument is delivered up to the person primarily liable thereon. The plaintiff contends — and has always contended — merely that the
 
 renunciation
 
 of the rights of the holder of a negotiable instrument must be in writing unless the instrument is delivered up to the person primarily liable thereon. That is what Section 122 of the Negotiable Instrument Law says. Section 119 of the law, Act No. 64 of 1904, p. 164, enumerates the five ways in which a negotiable instrument is
 
 discharged. Renunciation
 
 is not specified in section 119 of the act, as one of the ways by which a negotiable instrument may be
 
 discharged;
 
 but
 
 renunciation
 
 might be deemed to be embraced in the general terms of the 4th enumeration, thus: “By any other act which will discharge a simple contract for the payment of money.” To
 
 discharge
 
 a debt means to pay or otherwise satisfy the creditor. To
 
 renounce
 
 a claim — whether represented by a negotiable instrument or otherwise — means to release the debtor. The
 
 discharging
 
 of a debt is done by the debtor; the
 
 renouncing
 
 is done by the creditor. It is section 122 of the statute that deals with
 
 renunciation.
 
 The section declares: “The holder [of a negotiable instrument] may expressly renounce his rights against any party to the instrument, before, at or after its maturity.” And here the rule of evidence, applicable to
 
 renunciation
 
 only, is stated, thus: “A renunciation must be in writing, unless the instrument is- delivered up -to the person primarily liable thereon.”
 

 
 *995
 
 The defendant in this case does not claim that she has
 
 discharged
 
 her obligation to the holder of her promissory note. She claims that the holder of the instrument renounced his rights. The case, therefore, is governed by section 122 of the Negotiable Instrument Law, and particularly by the rule of evidence, that a renunciation [of the rights of the holder of a negotiable instrument against any party to the instrument]
 
 must
 
 be in writing, unless the instrument is delivered' up to the person primarily liable thereon. When the law says that a given transaction
 
 must
 
 be in writing, it means that it is not provable by parol evidence.
 

 The decision rendered in the case of J. I. Case Threshing Machine Co. v. Bridger, 133 La. 754, 63 So. 319, cited in the original opinion rendered in this case, is not applicable, because the
 
 discharge
 
 granted by the holder of the notes in the case cited was "by means of a written instrument,” as stated in the syllabus and in the text of the opinion.
 

 In some jurisdictions it is held that the rule of evidence stated' in section 122 of the Negotiable Instrument Law is applicable only to gratuitous renunciations, and hence that a renunciation or release made for a valuable consideration may be proved by parol evidence. It was so decided in Hazlehurst Oil Mill & Fertilizer Co. v. Booze, 160 Miss. 136, 133 So. 120, and in Vinson v. Wooten, 163 Ark. 170, 259 S.W. 366. In other jurisdictions it is held that a renunciation of the rights of a holder of a negotiable instrument is not provable by parol evidence, even though the renunciation was made for a valuable consideration. See Baldwin v. Daly, 41 Wash. 416, 83 P. 724; Portland Iron Works v. Siemens, 135 Or. 219, 295 P. 463; Manly v. Beam, 190 N.C. 659, 130 S.E. 633; Tisdel v. Central Savings Bank & Trust Co., 90 Colo. 114, 6 P. (2d) 912.
 

 It matters not which line of decisions is followed in this case, because according to the facts stated by the defendant, the alleged renunciation was made without any valuable consideration. As stated in the original opinion rendered' in this case, the defendant avers that the consideration for which she was released from her personal liability on the $6,000 note was that she would not “seek to protect her equity in the property” by bidding for it at the sheriff’s sale. And it is alleged by the defendant that, besides releasing her from her personal liability on the note held by the plaintiff, the latter agreed that any profit that might be made by the plaintiff’s bidding in the property and afterwards selling it “should be turned over and delivered to the defendant.” It is explained in the original opinion rendered in this case that the only way that the defendant could have protected' “her equity in the property” was to make a bid sufficient to pay off the first mortgage and satisfy also the second mortgage, held by the plaintiff. Surely, the defendant’s agreeing to abstain from bidding an amount sufficient to satisfy in cash the plaintiff’s claim in full was not a valuable consideration for the plaintiff’s renouncing its claim against the defendant, and agreeing to turn over and deliver to the defendant any profit that might be made by the plaintiff’s bidding in the property and afterwards selling it.
 

 
 *997
 
 My opinion, therefore, is that the judge of the district court was right in refusing to hear parol evidence of the alleged renunciation.