## Engle v. Werner, Executrix

*Metzger & Wickersham,* for plaintiff.

*H. E. Buffington* and *Wickersham & Wickersham,* for defendant.

HARGEST, P. J., March 22, 1937.—This case comes before us upon a motion for a new trial and also for judgment n. o. v. The suit was brought upon three notes aggregating $1,600, and was tried in 1934 before Judge Charles V. Henry, specially presiding, resulting in a verdict for defendant. The notes were admittedly given by decedent, Paul H. Werner, to plaintiff, Engle. Werner sold plaintiff a paper box manufacturing business, and he paid therefor the sum of $5,000 in cash and agreed to pay $300 per month on account of the unpaid purchase money and $100 per month for rental of the premises. About four months later Werner desired to repurchase the business. On February 15, 1933, they reached an agreement that Werner pay to Engle the sum which Engle had invested in the business. On that date the three notes in suit were given, payable in 30, 60, and 90 days. On the same day Engle and Werner called upon H. E. Buffington, an attorney living at Lykens, stating that they desired what was termed a "conditional sale" agreement, which was entered into at the time of the original transaction, to be canceled, and the property delivered back to Werner. Buffington told them it would require some time to prepare the necessary papers and that they were to come the following day to execute the transfer. On the following day the parties came. They had agreed that the sum of $5,300 cash should be paid by Werner to Engle but when they met there was some discussion about an additional $100 and Werner gave his check to Engle for the sum of $5,400. The evidence strongly indicated that all the money expended by plaintiff should be repaid by decedent in the repurchase of the plant and also strongly indicated that the amount of these three notes

was for money which plaintiff had expended. Engle offered four check showing that while he had the plant he had expended $1,603.94. The three notes upon which suit was brought aggregated $1,600, but the $3.94 may well have been interest and at least was disregarded when Werner gave Engle the three notes. The attorney for defendant testified, in effect, that the cash consideration paid at the time of the transfer of the plant was a discharge of all obligations between the parties, but no mention was made of the notes given on the previous day. Judge Henry wrote an opinion concluding that the jury had disregarded certain evidence which was "pointedly called to the attention of the jury" and, no motion for judgment n. o. v. having been made, he allowed the motion for a new trial. From that decision an appeal was taken to the Superior Court, the case was affirmed, and a new trial had, at which Judge Henry also presided, resulting in a verdict for defendant. A motion is now made both for a new trial and for judgment n. o. v. At the second trial the court had the jury answer three questions:

"1. Did Paul H. Werner sign the three notes dated February 15, 1933?

"A. Yes.

"2. Was the $5,400 paid by Werner to Engle in satisfaction of said notes?

"A. Yes.

"3. Under all the evidence do you find for plaintiff or for defendant?

"A. For defendant."

Plaintiff now contends that since two juries have rendered the same verdict in the case it would be an abuse of the discretion of the court to interfere with the second verdict. He cites the cases of Douds v. Beaver Valley Traction Co. (No. 1), 51 Pa. Superior Ct. 24; Hegarty et ux. v. Berger, 304 Pa. 221; Armstrong v. Dalasantro, 91 Pa. Superior Ct. 536, and Kelly v. Pittsburg & Birmingham Traction Co., 204 Pa. 623.

These cases support the proposition that the preponderance of evidence is to be determined from the quality and not the quantity of it, that the jury is to pass upon the credibility of witnesses and weigh the evidence, and that the verdict will not be set aside merely because the court would have found differently. There can be no dispute as to the correctness of these general principles. The trial judge, however, is not satisfied with the quality of the evidence upon which this verdict was founded, and for that reason would enter judgment notwithstanding the verdict. It is, to say the least, a peculiar transaction for Werner to give Engle three notes for $1,600, payable 30, 60, and 90 days thereafter, and on the next day give him a check for $5,400 in full payment of the notes without mentioning them.

We are of opinion that there is still a more formidable obstacle to the defense against the notes. Section 122 of the Negotiable Instruments Law of May 16, 1901, P. L. 194, 56 PS §274, provides:

"The holder may expressly renounce his rights against any party to the instrument before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor, made at or after the maturity of the instrument, discharges the instrument. But a renunciation does not affect the rights of a holder in due course, without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

"Renunciation", as used in the Negotiable Instruments Law, means "release", and it is settled that a release cannot be shown by parol but must be in writing when the note has not been surrendered: 2 Daniels on Negotiable Instruments (7th ed.) §1220; 2 Joyce on Defenses to Commercial Paper (2d ed.) sec. 997; 8 C. J. 615, sec. 855; Baldwin v. Daly et al., 41 Wash. 416, 83 Pac. 724.

Perhaps the leading case on this subject is Whitcomb v. National Exchange Bank of Baltimore, 123 Md. 612, 91 Atl. 689. In that case the question was, what is the

meaning of "renunciation" as used in section 122 of the Negotiable Instruments Law? The court said:

"The theory advanced by the defendant is that the provision we have quoted from the Negotiable Instruments Act applies only to renunciations made without consideration, and that it has no reference to releases of liability under agreements which operate by way of accord and satisfaction. '. . . Undoubtedly the word 'renunciation,' as used in the section quoted, appropriately describes the act of surrendering a right or claim without recompense, but it can be applied with equal propriety to the relinquishment of a demand upon an agreement supported by a consideration. . . . We see no occasion to thus narrow its effect, and there is cogent reason for duly regarding its plain and comprehensive significance."

The court held that a renunciation or release could only be shown in writing where the instrument was not delivered up to the person primarily liable thereon.

To the same effect are Manly v. Beam, 190 N. C. 659, 130 S. E. 633; Page Trust Co. v. Lewis et al., 200 N. C. 286, 156 S. E. 504; Leask et al. v. Dew, 102 App. Div. 529, 92 N. Y. Supp. 891; Tisdel v. Central Savings Bank & Trust Co., 90 Colo.. 114, 6 P. (2d) 912, 918; Portland Iron Works v. Siemens et al., 135 Ore. 219, 295 Pac. 463; Kotzman v. Condit et al., 169 Okla. 422. We have not been furnished with, nor have we discovered, any case directly in point in Pennsylvania. But it must be remembered that this is a uniform negotiable instruments law and therefore the authorities of the highest courts of other States are something more than merely persuasive. In the case of Whitcomb v. National Exchange Bank of Baltimore, supra, the court also said, with reference to the act:

"We see no occasion to thus narrow its effect, and there is cogent reason for duly regarding its plain and comprehensive significance. The statute in which it is used was enacted upon the recommendation of the Commission representing Maryland in the movement to promote uni-

formity of legislation. The same measure has been adopted as a part of the statutory law of a number of the States of the Union. The primary purpose of its enactment was to secure uniformity in the law governing negotiable instruments. *Vanderford* v. *The Farmers and Mechanics' National Bank of Westminster*, 105 Md. 164. In order that this object may be realized it is important that differences of judicial construction as to its application should be avoided so far as may be reasonably practicable. This end can best be attained by allowing to the language of the statute the full effect to which it is legitimately entitled."

To obviate, as far as possible, the unfortunate divergent construction of uniform statutes, recent acts promulgated by the National Conference of Commissioners on Uniform State Laws contain a section as follows:

"This Act shall be so interpreted and construed, as to effectuate its general purpose to make uniform the law of those states which enact it."

Mr. Justice Hughes, in the case of Commercial National Bank of New Orleans v. Canal-Louisiana Bank & Trust Co., 239 U. S. 520, 528, said, after quoting the section of the uniform act just above quoted:

"This rule of construction requires that in order to accomplish the beneficent object of unifying, so far as this is possible under our dual system, the commercial law of the country, there should be taken into consideration the fundamental purpose of the Uniform Act and that it should not be regarded as merely an offshoot of local laws. . . . We think that the principle of the Uniform Act should have recognition to the exclusion of any inconsistent doctrine which may have previously obtained in any of the States enacting it".

In the case of Aetna Chemical Co. v. Spaulding & Kimball Co., 98 Vt. 51, 126 Atl. 582, the Supreme Court of Vermont, after also referring to the provision as to uniformity above quoted, in the Uniform Sales Act, said:

"In view of this requirement, decisions of the highest courts in other states having such enactment, involving its interpretation or construction, are precedents of more than persuasive authority. Speaking generally, they are precedents by which we are more or less imperatively bound in cases where similar questions are presented."

So in Broderick & Bascom Rope Co. v. McGrath et al., 81 Misc. 199, 142 N. Y. Supp. 497, it is said:

"The desirability of uniformity in the laws of various states with reference to negotiable instruments is so obvious, the legislative intent to harmonize our theretofore conflicting decisions, with those of other jurisdictions, is, to my mind, so clearly expressed, that full effect should be given thereto."

In Stewart v. Hansen, 62 Utah 281, 284, 218 Pac. 959, the supreme court, referring to the uniformity section in the Uniform Sales Act, above quoted, said:

"If, therefore, the section of the Uniform Sales Act here in question has been construed by the court of last resort of any state in which the Uniform Sales Act is in force, then I conceive it to be the duty of this court to follow such construction in order to comply with the spirit and purpose of section 5183, supra, and to maintain the uniformity of the provisions of the Uniform Sales Act. It would be utterly futile for the Legislatures of the several states to adopt uniform laws upon any subject if each court of the several states followed the notion of its members with regard to how a particular provision should be construed and applied."

The Supreme Court of Utah then followed a case decided in Connecticut, as being controlling.

In view of the foregoing authorities it is incumbent upon us to preserve the uniformity by the construction which other States have placed on the Negotiable Instruments Law. Plaintiff, Engle, had the notes in his possession. He never surrendered them. No instrument in writing, either as a renunciation or release, was ever given, nor was he asked to give such instrument.

In Koenig v. Curran's Restaurant & Baking Co. et al., 317 Pa. 431, although the application of the Negotiable Instruments Law was not involved, it is said:

"The possession of an instrument in writing for the payment of money affords proof, prima facie, of the right in the holder to recover upon it according to its terms. The holder is not required to prove that it has not been paid. His case is made by the production of the instrument in the first instance, and the burden of showing payment is on him who alleges it".

We are of opinion that the parol evidence offered by defendant in this case was improperly admitted. It follows, also, that if a motion for judgment n. o. v. had been filed after the first trial such judgment should have been entered. No such motion having been filed, the court granted a new trial. Now, under the Act of April 22, 1905, P. L. 286, 12 PS §681, we can enter such judgment as ought to be entered on the record, and, there being a motion for a judgment n. o. v., we are of opinion that it must be entered: Smith v. Graham, 101 Pa. Superior Ct. 604.

And now, March 22, 1937, the motion for new trial is hereby overruled, and the motion for judgment n. o. v. is sustained. Judgment is hereby directed to be entered in favor of plaintiff in the sum of $1,600 with interest from February 15, 1933, upon payment of the jury fee.