MINNIE F. BEACH *vs.* ANTHONY BELLO *et al.*

JULY 20, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of assumpsit on a promissory note against two defendants who are sued as joint makers. In the superior court, the trial justice, at the conclusion of the evidence, directed the jury to return a verdict for the plaintiff against both defendants for $2626.88, the amount claimed to be due on the note. To this action, to rulings made during the trial excluding evidence, and to the refusal of the trial justice to permit the filing of a certain plea, the defendant Paolantonio has prosecuted his bill of exceptions to this court.

All these exceptions involve substantially the same question. It appears from the evidence that the defendants borrowed four thousand dollars from the plaintiff and executed the note sued on, secured by a mortgage, signed by them and their respective wives, on real estate in Providence. All payments of interest on the note were made by the defendant Bello and all notices were sent to him. The plaintiff claims that this was done by reason of instructions given her by the defendant Paolantonio at the time the original transaction was consummated, but this is denied by the latter. After some years there was a default in the payment of interest, and the plaintiff foreclosed her mortgage, receiving $1550 from the sale of the mortgaged property, which was purchased by a third person. Previously the sum of two hundred dollars had been paid by Bello on the principal of the mortgage, and the amount recovered in the case at bar is the balance due on the face of the note, together with interest and expenses of foreclosure.

The defendant Paolantonio contends in substance that although he signed the note as maker, he was actually only surety for Bello, and that by reason of an alleged conversation between the plaintiff and himself, followed by certain conduct on his part, the plaintiff is now estopped to hold him on the note. To support this claim, the defendant Paolantonio testified that shortly after the maturity of the note, and before any default thereon, he had an interview with the plaintiff concerning the mortgaged property, tell-

ing her that he was going to sell his interest therein to Bello, and that following his talk he carried out his intent as expressed. From the affidavit of defense filed in the case by Paolantonio, it appears that he took back from Bello a mortgage of $1500 when this transaction went through. The defendant Paolantonio, however, was not permitted to relate the details of this alleged conversation with the plaintiff and the exclusion of this evidence by the trial justice forms the basis of several of defendant Paolantonio's exceptions. The plaintiff denied that any such interview ever took place.

During the trial, Paolantonio asked permission of the trial justice to be allowed to file a plea of estoppel based on his claim that the plaintiff had orally agreed with him in substance that in consideration of his conveying his interest in the mortgaged property to Bello and his refraining, while the plaintiff's mortgage was outstanding, from demanding any payment on the principal of the mortgage note to be given him in return by Bello, the plaintiff would release him (Paolantonio) from any further obligation on the note now in suit and look only to the defendant Bello for payment thereof, and that in pursuance of this understanding with the plaintiff, he made the conveyance to Bello. This suggested plea of estoppel indicates in substance the proof which the defendant Paolantonio desired to offer through the evidence which was excluded. The trial justice refused to let the defendant Paolantonio file such a plea and this ruling was excepted to by the latter.

The plaintiff's contention, which was accepted by the trial justice, is that the situation presented by the record herein is governed by the provisions of sec. 128, chapter 227, general laws 1923, which is as follows: "The holder may expressly renounce his rights against any party to the instrument before, at, or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does

not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

This is a portion of the Negotiable Instruments Law so-called, which has been adopted in many jurisdictions in the interest of uniformity in disposing of questions relating to negotiable paper. The first sentence of the above section provides that the holder of the note may renounce his rights against any party to the instrument. The defendant Paolantonio is unquestionably a party in some form to the note now before us, and, in view of the broad language used in the sentence referred to, it would seem unimportant, as far as the applicability of the section is concerned, whether he was a joint maker or a surety. The latter portion of the above section then provides that unless the instrument be delivered to the person primarily liable thereon, the renunciation must be in writing. In the instant case, the evidence shows that the plaintiff still has possession of the note in question, and the defendant Paolantonio's testimony reveals that the alleged release or renunciation he relies on to be freed of all liability on the note was by a claimed oral agreement between himself and the plaintiff based, as he contends, on consideration.

It may be noted that this court in *Brooks* v. *Josephson,* 47 R. I. 78, at page 81, held that, "evidence of a parol agreement, contemporaneous with a promissory note containing an absolute promise to pay, can not be received to contradict the terms of the note, and to relieve a maker from the obligation of such promise, nor to relieve an indorser from the liability which in law arises from his indorsement." In the instant case, however, the alleged parol agreement was not contemporaneous with the note, but was said to have been made after its maturity.

There seems to be no dispute that when a renunciation is gratuitous, it must be in writing, under this section of the statute, to be made effective. The authorities are in conflict, however, in construing this section on the question

of whether or not a writing is necessary when it appears that the release or discharge was made upon consideration. 3 Daniel on Negotiable Instruments, (7th ed.), §1487. The issue involves a determination of the proper relationship between the section now before us and preceding sections, which deal with the manner in which a negotiable instrument, and those secondarily liable thereon, may be discharged. In our act, sec. 125 of chapter 227, *supra,* contains the following language which is material to the matter now before us: "A negotiable instrument is discharged: . . . 4. By any other act which will discharge a simple contract for the payment of money; . . . "

An examination of the pertinent sections of chap. 227, *supra,* indicates that sec. 125 deals primarily with the *discharge* of the *negotiable instrument itself,* setting out the methods under which this may be accomplished. Section 126 points out different ways in which one *secondarily liable* on the instrument is *discharged.* Section 128 provides that a holder may *expressly renounce* his rights against *any party* to the instrument, but requires that such renunciation must be in writing unless the instrument be delivered up to the person primarily liable thereon. In other words, sec. 125 is concerned with the discharge of the instrument, sec. 128 primarily with the renunciation by the holder of his rights against any party thereon, conceivably in many cases leaving the instrument still undischarged and in effect against other parties thereto. It may be noted that the latter section specifically provides that any such renunciation does not affect the rights of a holder in due course without notice, thereby protecting the validity and the negotiability of the instrument under such conditions.

Among the cases which hold that the renunciation or release must be in writing to be valid, even though it appears that such release was for consideration and by way of an accord and satisfaction or a novation are *Baldwin* v. *Daly,* 41 Wash. 416; *Pitt* v. *Little,* 58 Wash. 355; *Whitcomb* v. *National Exchange Bank of Baltimore,* 123 Md.

612; *Portland Iron Works* v. *Siemens,* 135 Ore. 219; *Manly* v. *Beam,* 190 N. C. 659; *Tisdel* v. *Central Savings Bank,* 90 Colo. 114.

Authorities taking the opposite view, to the effect that the section relied on by the plaintiff applies only to instances involving the gratuitous giving up of a right and not to a parol release or discharge for a valuable consideration, whether by an accord and satisfaction or an executed novation, are *McGlynn* v. *Granstrom,* 169 Minn. 164; *Lockhart State Bank* v. *Baker,* 264 S. W. 566, (Tex. Civ. App.); *Hazlehurst Oil Mill & Fertilizer Co.* v. *Booze,* 160 Miss. 136; *Jones* v. *Wetlin,* 39 Wyo. 331; *Gannon* v. *Bronston,* 246 Ky. 612; *Bank of United States* v. *Manheim,* 264 N. Y. 45.

Upon consideration, we are of the opinion that the meaning and construction placed upon the section in question by the courts of the last stated group of jurisdictions is sound, and such construction is adopted by us. This holding follows the weight of authority and especially the trend of the more recently decided cases. We find that sec. 128 was only intended to provide a means whereby the holder of an instrument could, gratuitously and without consideration, renounce his rights against any other party thereon. To make such a renunciation effective under the provisions of such section, the renunciation must be in writing or the instrument delivered up to the person primarily liable thereon. On the other hand, if a claimed release of rights is based on an oral agreement supported by executed consideration, between the holder of the instrument and another party thereon, then sec. 128 is in no way applicable to such a situation, and no writing is necessary to make the release effective. In our judgment, this construction of sec. 128 makes it entirely consistent with the sections of the act immediately preceding it, and gives all of such sections meaning and effect. By such construction the scope of sec. 125 is not qualified or restricted by the provisions of sec. 128, as such sections are entirely independent of each

other. By reason of our above holding regarding the intent and meaning of sec. 128, it is clear that the trial justice committed error in excluding the evidence which the defendant Paolantonio desired to introduce in order to show a parol agreement of some nature between himself and the plaintiff, the holder of the note sued on, and in striking out certain evidence bearing on the same matter. This evidence was admissible under the circumstances disclosed in this case. As we have indicated, the applicability of sec. 128 necessarily would depend upon such evidence as might be introduced. We also find that on the present record, the direction of a verdict for the plaintiff by the trial justice was error.

The defendant Paolantonio's fourth to seventh exceptions inclusive are sustained; his other exceptions are not passed upon, and the case is remitted to the superior court for a new trial.

*John A. Tillinghast,* for plaintiff.

*Francis A. Manzi,* for defendant Paolantonio.