## Orville B. Gorin, Administrator, Appellant, v. R. E. Wiley and F. R. Wiley, Appellees.

1. BILLS AND NOTES, § 308*—*what is purpose and effect of Negotiable Instruments Law in matter of discharge of instrument.* Section 121 of the Negotiable Instruments Law (J. & A. ¶ 7761), relating to renunciation of rights by the holder of an instrument, was undoubtedly intended to protect the innocent holder of negotiable instrument from the necessity of meeting a defense of payment to or discharge by the original payee while the instrument was in his hands, but certainly was never intended to prohibit the maker of a negotiable instrument from paying it to the payee named therein at anytime before or after maturity, if such payee still had the instrument and was willing to receive the amount represented by it, or to prohibit such obligation's being discharged by any arrangement between the parties which they choose to make while the instrument is still in the hands of the payee therein named.

2. BILLS AND NOTES, § 308*—*right, notwithstanding Negotiable Instruments Law, to discharge instrument by any arrangement desired.* That, notwithstanding the provisions of section 121 of the Negotiable Instruments Law (J. & A. ¶ 7761), relating to renunciation of rights by the holder of an instrument, it is still possible to discharge the instrument while it remains in the hands of the payee therein named by any arrangement between the parties which they

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

choose to make is indicated by section 195 of the Law (J. & A. ¶ 7835), which provides that "in any case not provided for in this act the law merchant shall govern."

3. BILLS AND NOTES, § 308*—*law merchant as governing defense of novation.* The defense of discharge by novation presents a case not provided for by the Negotiable Instruments Law and, therefore, under the provision of section 195 of such Law (J. & A. ¶ 7835), the law merchant must govern.

4. BILLS AND NOTES—*what is origin of law merchant.* The law merchant grew up from usages of trade which general convenience and a common sense of justice established to regulate the dealings of merchants and mariners in all the commercial countries of the civilized world.

5. BILLS AND NOTES—*what is origin of rules applicable to commercial paper.* The rules applicable to commercial paper were transplanted into the common law from the law merchant; they had their origin in the customs and course of business of merchants and bankers and are now recognized by the courts because they are demanded by the wants and convenience of the mercantile world.

6. BILLS AND NOTES, § 308*—*payment as not necessary to discharge bill or note.* By the law merchant, which has been ingrafted into the common law, payment is not necessary to discharge a bill or note either as to a party secondarily liable or as to one primarily liable.

7. NOVATION, § 1*—*what obligations can be destroyed by novation.* Whatever obligation can be destroyed at all can be destroyed by novation.

8. BILLS AND NOTES, § 361*—*propriety of overruling demurrer to defendant's plea of discharge by novation.* Where defendants in an action on promissory notes pleaded a discharge of such notes by novation, *held* that a demurrer to such plea on the ground that the defense of novation was not permissible under the Negotiable Instruments Law was properly overruled.

Appeal from the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding. Heard in this court at the April term, 1919. Affirmed. Opinion filed October 21, 1919.

MILLS BROTHERS, for appellant.

HENRY H. MOREY, for appellees.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

In the lifetime of Nathan L. Krone, deceased, appellees gave to him certain promissory notes which he held until his death. After his death appellant brought suit to recover on all such notes. Appellees filed their plea of discharge by novation. Briefly the facts pleaded are that during the lifetime of Krone, pursuant to a three-sided contract to which Krone, appellees and one Frank Peers were all parties, appellee R. E. Wiley sold and delivered to Peers certain personal property in consideration of the promise of Peers then and there made to appellees and to Krone to pay Krone the notes mentioned in the declaration and that the said Krone then and there accepted the said promise of the said Peers in full satisfaction and discharge of the said obligations declared on in the declaration. A demurrer to that plea was overruled. Judgment against appellant in bar of his action and for costs was entered and this appeal followed.

Appellant does not deny that the plea sets up a good defense at the common law but insists that the Negotiable Instruments Act, ch. 98, Rev. St., in force July 1, 1907 (J. & A. ¶ 7640 *et seq.*) covers the whole field or subject of negotiable instruments and that such instruments can only be discharged under the provisions of sections 51, 87, 118 or 121 of that Act.

By section 51 (J. & A. ¶ 7690) it is provided that "the holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument." Section 87 (J. & A. ¶ 7727) provides that: "Payment is made in due course when it is made at or after maturity of the instrument to the holder thereof in good faith and without notice that his title is defective."

By section 118 (J. & A. ¶ 7758) of that Act it is provided that "a negotiable instrument is discharged:

"1. By payment in due course by or on behalf of the principal debtor.

"2.    By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation.

"3.    By the intentional cancellation thereof by the holder.

"4.    When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

By section 121 (J. & A. ¶ 7761) it is provided:

"The holder may expressly renounce his rights against any party to the instrument before, at, or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument, discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in *writing, unless the instrument is delivered up to the person primarily liable thereon.*"

Appellant argues that when the legislature enacted the Negotiable Instruments Act it substituted the new law for the old; that not only is the defense interposed not one recognized by the new law but that by the provisions of section 121 above quoted such a defense is prohibited except where the instrument is delivered up to the person primarily liable thereon or the renunciation is in writing.

It may be conceded as appellant argues that the defense of discharge by novation is not recognized in any of the sections quoted from the Negotiable Instruments Act but there is nothing to indicate that section 121 was intended to prohibit it. That section was undoubtedly intended to protect the innocent holder of a negotiable instrument from the necessity of meeting a defense of payment to or discharge by the original payee while the instrument was in his hands. It certainly was never intended by the legislature to prohibit the maker of a negotiable instrument from paying it to the payee named therein at any time before

or after maturity, if such payee still had the instrument and was willing to receive the amount represented by it, or from such obligation being discharged by any arrangement between the parties which they choose to make while such instrument is still in the hands of the payee therein named. That such defenses were intended to be still reserved is shown by section 195 (J. & A. ¶ 7835) of that Act which provides that "in any case not provided for in this act the rules of the law merchant shall govern." The defense set up by this plea presents a case not provided for by the Negotiable Instruments Act, therefore the law merchant must govern.

The law merchant grew up from "usages of trade which general convenience and a common sense of justice have established to regulate the dealings of merchants and mariners in all the commercial countries of the civilized world." Kent's Commentaries, vol. 3, page 2. The rules applicable to commercial paper were transplanted into the common law from the law merchant. They had their origin in customs and course of business of merchants and bankers and are now recognized by the courts because they are demanded by the wants and convenience of the mercantile world. *Woodbury v. Roberts*, 59 Iowa 349. By the law merchants so ingrafted into the common law, "payment is not necessary to discharge a bill or note either as to a party secondarily liable or as to a party primarily liable." For instance, a bill or note may be discharged by the act of the parties by novation, by accord and satisfaction, by compromise and settlement, by release, etc. Corpus Juris, vol. 8, page 611, sec. 848. "Parties primarily liable on a bill or a note, such as the makers and acceptors, are discharged and the instrument is extinguished, in general, by any act which will discharge any simple contract for the payment of money, such as payment, release or the like." Corpus Juris, vol. 8, page 611, sec. 489. "Any obliga-

tion which can be destroyed at all may be destroyed by novation. Thus legacies, judgments, mortgages, guarantees, and similar accessories are as much the subjects of novation as simple contract debts. So the rules of novation apply as completely to debts evidenced by mercantile paper as to other obligations." Cyc. vol. 29, page 1134; *Struble v. Hake*, 14 Ill. App. 546; *Gannon v. Cook*, 122 Ill. App. 615. See also *Shinn v. Fredericks*, 56 Ill. 439; Daniels on Negotiable Instruments (5th Ed.), secs. 1221, 1233, 1292.

The demurrer to the plea was properly overruled. The judgment is affirmed.

*Judgment affirmed.*