ANDREW P. McGLYNN v. GEORGE W. GRANSTROM.[1]

November 19, 1926.

No. 25,470.

**In action on note immaterial that discharge of indorser was not in writing, as required by N. I. L. § 122.**
    1. Defendant, sued as an indorser of a promissory note, defended on the ground that the maker had been discharged. On conflicting evidence he prevailed. It is not a case of renunciation by the holder of his cause of action against the indorser and it is immaterial that the discharge of the latter was not by an instrument in writing, as required by section 122 of the Negotiable Instruments Law (§ 7165, G. S. 1923), in case of a renunciation.

[1]Reported in 210 N. W. 892.

**Meaning of renunciation in foreign law indicates that section applies to unilateral act of holder.**

2. The meaning of "renunciation" in French and English law, from the latter of which it came into the N. I. L., and its connection with the subject of discharge, as treated in §§ 119 and 120, N. I. L., lead to the conclusion that § 122, requiring a "renunciation" to be in writing or accompanied by a delivery back of the instrument, applies only to the unilateral act of the holder, usually if not always without consideration, whereby he expresses the intention of abandoning his rights on the instrument or against one or more parties thereto.

Bills and Notes, 8 C. J. p. 612 n. 13, 14; p. 615 n. 60, 65; p. 616 n. 66, 68; p. 617 n. 90.

Plaintiff appealed from an order of the district court for Ramsey county, Michael, J., denying his motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Harry Weiss* and *Francis M. Smith,* for appellant.

*Morphy, Bradford, Cummins, Jackson, Cummins & Lipschultz,* for respondent.

STONE, J.

Action by the payee against an indorser of a promissory note. After verdict for defendant, plaintiff appeals from the order denying his motion for judgment or a new trial.

The defense was that the payee was party to an executed oral contract with the maker and third parties which released the former. If the contract was made, the maker was discharged. The jury decided that issue for defendant. The evidence is conflicting and the verdict must stand. It is therefore a case where the indorser of the note is discharged because the maker has been discharged. Section 120, N. I. L. (§ 7163, G. S. 1923).

The contract was not in writing. For that reason plaintiff invokes section 122, N. I. L. (§ 7165, G. S. 1923), which provides that the holder may "expressly renounce his rights against any party to the instrument" and that an unconditional "renunciation" of such rights against the principal debtor at or after maturity discharges the instrument. The section concludes thus: "A renunciation must be in

writing, unless the instrument is delivered up to the person prima-rily liable thereon." There was no delivery to the maker of the note in suit. Hence it is argued, there being no renunciation in writing, that defendant is still liable. We cannot so hold.

Section 122 is to be construed with the rest of the statute and particularly sections 119 and 120 (§§ 7162, 7163, G. S. 1923). The first enumerates the methods whereby a negotiable instrument it-self is "discharged" and attaches that result to intentional cancel-ation or "any other act which will discharge a simple contract for the payment of money." Section 120 in similar fashion enumerates the conventional methods of discharging parties secondarily liable.

It is significant that discharge is dealt with in two of the sections but only express "renunciation" in the third. That suggests rather pointedly that the renunciation of section 122 is something different from the discharge of sections 119 and 120. If the latter are unqualified there may be a discharge without an instrument in writing or a delivery back of the bill or note. But under section 122 there cannot be a renunciation save in writing or by delivery back. If it was the intention to apply section 122 to any of the subject matter of sections 119 and 120, why the change in terminology from discharge to renunciation? Why in that case is express renuncia-tion rather than discharge made the subject of legislation?

It is not permissible to deny the change of significance and so con-clude that it does not indicate a change of thought. If it had been the intention to qualify sections 119 and 120 by the re-quirement of an instrument in writing, it would not have been left to implication. That is one reason for avoiding the construction which makes the renunciation of section 122 the same process as the discharge of the earlier sections. Another is that the idea of a writing as an essential to every discharge of a negotiable instru-ment or a party thereto is a stranger to the law merchant which it was sought to express and make uniform, but not new or strange, by the N. I. L. It would be a radical as well as an impractical de-parture to make essential to any of the discharges of sections 119 and 120 a written memorial of the transaction.

Under section 119 the cancelation of a negotiable instrument discharges it. Although it may well be in effect a renunciation of the maker's rights against all the parties and discharge them, it certainly need not be in writing. It may be by purposely burning the instrument or otherwise destroying it. Henson v. Henson, 151 Tenn. 137, 268 S. W. 378, 37 A. L. R. 1131. So also there may be a discharge through novation or an accord and satisfaction. Yet there need be neither writing nor delivery back, unless required by section 122, for a negotiable instrument may be discharged by any "*act*" which will discharge a simple contract for the payment of money." "A verbal agreement of the payee of a note with the maker to release him, and accept a third party in his stead, who signs in pursuance of such agreement, is upon sufficient consideration, and is valid." 2 Daniel, Neg. Inst. (4th ed.) § 1290. So also the maker of a note may pay it by transferring property to the holder with that agreed purpose and effect. There is a discharge of the instrument even though it is not surrendered to the maker and there is no memorial in writing.

So it is an anomalous thing to require a written instrument in order to effect in every case, where there is no delivery back of the bill or note, a discharge of the instrument or a party thereto. Moreover it is directly contrary to the literal effect of sections 119 and 120 of the N. I. L. itself. That difficulty requires construction and the search for a basis for concluding that the renunciation of section 122 is something different or less than the discharge of sections 119 and 120. As already stated the very difference in terminology indicates a change in thought and the purpose to make the subject matter of section 122 something different from that of the other two. The difficulty disappears and an answer to the problem found if section 122 is traced to its source.

Section 122 came to us from the British Bills of Exchange Act. According to Judge Russell of the supreme court of Nova Scotia (Russell, Bills [2d ed.] 421) it "embodies the law as laid down" in Foster v. Dawber, 6 Ex. 839, 851. There it was held that both bills and notes could be discharged by "express waiver" *without* con-

sideration. Parke, B., explained that the rule had come into Eng-lish law from the law merchant. He referred to it as "that rule * * * prevailing in foreign countries, viz., that there may be a release and discharge from a debt by express words, although unac-companied by satisfaction or by any solemn instrument. Such ap-pears to be the law of France, and probably it was for the reason above stated that it has been adopted here." Expounding the stat-ute, Judge Russell says in his text:

"The acceptor may be discharged from his liability on the bill by a renunciation. * * * Before the passing of the Act this re-nunciation was complete and effective without any writing and with-out the surrender of the instrument, but it was thought well to re-quire some formality. It still remains law that no consideration is necessary for such a discharge, but in order to be effective a renunci-ation must be in writing unless the bill is delivered up to the ac-ceptor."

The same concept of renunciation, express waiver without consid-eration, is expressed by another English authority, Byles, Bills (18th ed.) 233. To the same effect are the Annotations by Mr. Smythe of the Canadian Bills of Exchange Act of 1890, p. 111. Sir M. D. Chalmers, draftsman of the British Bills of Exchange Acts of 1882 and 1906, says [Chalmers, Bills of Exchange (8th ed. 244]:

"The words requiring the renunciation to be in writing were added in committee. They alter the English law, but bring it into accord-ance with Scottish law. At common law a contract cannot be dis-charged by accord without satisfaction. The special rule as to bills and notes partially reproduced in this section seems to have been consciously imported into the law merchant from French law, (citing Foster v. Dawber, supra). This mode of discharge is known in France as 'remise volontaire,' and is recognized in countries where the civil law is followed."

Foster v. Dawber was cited in Abrey v. Crux, 4 Eng. R. C. 194 (201), as exemplifying the proposition that "The law as to bills of exchange constitutes an exception to that relating to ordinary con-

tracts, with respect to the discharge by parol of the obligation created thereby." It was again referred to in Cook v. Lister, 4 Eng. R. C. 551 (561), in support of the statement, applied to the renunciation by the holder of his rights under a bill of exchange, that "It is only necessary that he should assent to his having no longer any claim on the bill." In Northern Crown Bank v. International Electric Co. 24 Ont. L. R. 57 (Ann. Cas. 1912, 472), it is said that the "renunciation of the Bills of Exchange Act of England means "The discharge of the bill by accord without satisfaction."

Laws like words sometimes cannot be understood without a knowledge of their derivation. Elementary rules of construction as well as the plain sense of the case require us to view the statute in the light thus shed upon it from its source. To start with it was French law that the obligation evidenced by a bill of exchange could be voluntarily remitted by the holder, no consideration being necessary. That principle was approved in Foster v. Dawber and there held to apply to both bills and notes. Finally it was adopted by the English Bills of Exchange Act, where however it was conditioned by the requirement of written evidence of the transaction. In that form and with that meaning it came into our own uniform statute. That meaning cannot be expanded without impinging upon the intended effect of the other provisions of the statute, particularly sections 119 and 120. So we are constrained to hold that the renunciation, which under section 122 must be in writing, is one accomplished by the unilateral act of the holder. Ordinarily if not always it will be without consideration.

The difficulty of the question, its novelty and the extent to which thus far they disagree upon it, make it advisable to review the American cases which have been brought to our attention.

In Whitcomb v. Nat. Exch. Bank of Baltimore, 123 Md. 612, 91 Atl. 689, an indorser defended upon the ground that he had been released by accord and satisfaction. The transaction was held ineffectual as a discharge for lack of the memorandum in writing required by section 122. That construction, it was recognized, produced an apparent conflict with section 119. The difficulty was met

by saying that section 119 "is confined to a designation of *acts* which discharge the instrument, and does not purport to prescribe the character of proof by which they must be established." This case was followed in Manly v. Bean, 190 N. C. 659, 130 S. E. 633, and its rule applied to a defense of novation.

In Baldwin v. Daly, 41 Wash. 416, 83 Pac. 724, one held to be a surety on a promissory note defended on the ground that in consideration of his part payment of the debt the holder had released him. It was held that the release was not effective because not in writing. The renunciation of section 122 was held the equivalent of release. There was no discussion of the joint effect of sections 119, 120 and 122. The last case was followed in Pitt v. Little, 58 Wash. 355, 108 Pac. 941, an action against the maker of a note who defended upon the ground of an oral release for consideration. Generally to the same effect are Dickinson v. Vail, 199 Mo. App. 458, 203 S. W. 635, and Missouri State Life Ins. Co. v. California State Bank, 202 Mo. App. 347, 216 S. W. 785.

In none of these cases was the attempt made to trace to its source the legal concept of renunciation as distinguished from that of discharge. The subject is discussed in 3 Williston, Contracts, §§ 1832, 1833. After quoting at length from Foster v. Dawber and setting out section 62 of the English Bills of Exchange Act concerning renunciation, the author expresses the view that because of the incorporation of the same idea in our uniform statute "a written renunciation or discharge of a bill or note or of the liability of any party thereon is now good without consideration." In a footnote, he characterizes as "unsound" the Washington view (Baldwin v. Daly, supra), "requiring every discharge to be in writing."

We go now to cases more in accord with our own view. In Gorin v. Wiley, 215 Ill. App. 541, it was held that section 122 had no application to an executed novation which discharged the makers of the notes in suit. That section was considered not to require, with respect to the methods of discharge enumerated in section 119, any memorial in writing.

In Bradley & Metcalf Co. v. McLaughlin, 87 Okla. 34, 208 Pac. 1032, section 122 was held to be without application to an accord

and satisfaction. No effort was made to explain to what class of cases that section does apply.

In Hall v. Wichita State Bank & Trust Co. 254 S. W. 1036, the court of civil appeals of Texas held section 122 inapplicable to an oral but executed novation. The Washington and Missouri cases, contra, were referred to as having the effect of applying this section "to every character of case in which an agreement or intention to release the obligor is an element of discharge." With that view the Texas court did not agree, its conclusion being that section 122 was intended to deal only "with the formal and express. release of the common law" and that section 119 was intended "to continue in effect other recognized methods of discharging obligations of this character."

In Lockhart State Bank v. Baker, 264 S. W. 566, the same court held that section 122 did not apply to an accord and satisfaction. The court said concerning sections 119, 120 and 122, that "neither of these sections relate to, limit, or control the other, but relate to and control separate and entirely distinct matters."

It is with the latter group of cases that we agree, and, if we go farther than any of them in limiting the renunciation of section 122, it is because no other result is permitted by the true meaning of the provision as it came into our law. That meaning has not been expanded by the N. I. L. Rather its original limitations have been preserved by the force of sections 119 and 120.

So far as the assignments of error are not already disposed of, they require no discussion.

Order affirmed.