EARL H. WILKINS, ADMINISTRATOR, APPELLEE, v. WALTER SKOGLUND, APPELLANT.

FILED JULY 13, 1934. No. 28824.

*Waring & Waring,* for appellant.

*Sloans, Keenan & Corbitt, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY and PAINE, JJ., and MEYER, District Judge.

MEYER, District Judge.

This is an action by the administrator of the estate of August Skoglund against Walter Skoglund, son of the deceased; the petition declaring upon a lost note for $2,000, which said note was made, executed and delivered by the defendant to his father. Defense was made on the ground that said indebtedness had been duly satisfied and paid or forgiven by August Skoglund in his lifetime.

The evidence discloses that the note in question was given November 8, 1930, and was due in one year; that August Skoglund died September 5, 1932, leaving two children, Walter, the defendant, and Clyde, and that for some time prior to his death he made his home with Clyde upon a farm owned by the said August Skoglund; that he kept his papers at the home of Clyde, in a trunk in his room upstairs; that among his papers in the trunk, opened after his death, were certain liberty bonds and his canceled check for $2,000 by which he had advanced to defendant said sum at the time said note was given, but that the note in question could not be found.

Defendant's wife testified that in the spring of 1931 she had a conversation with August Skoglund at their home in the presence of her husband, the defendant, and the defendant offered to prove by her that August Skoglund then talked with her concerning the note in question and told her that he was indebted to Walter Skoglund in the approximate sum of $500 for two years' board and lodg-

ing; that he had given certain property to his son Clyde, and that in order to equalize between his two sons he had destroyed the note given by his son Walter, and further offered to show that some time during the following summer her father-in-law again made substantially the same statement to her. Defendant also offered to prove that he had had a conversation with his father concerning the note in question; that his father told him that as Clyde had received an automobile and some other property from him, which was of the approximate value of $2,000, he had destroyed the note given him by Walter, and then and there told defendant that the note, having been destroyed, would not be collected by him and that it would not be found or available after his death. These offers were objected to as incompetent under the statute (Comp. St. 1929, sec. 20-1202) on the ground that the adverse party was the representative of the deceased person, and for the further reason that the defendant was seeking to prove a rescission by parol testimony. The objections were sustained by the trial court and the evidence excluded. Offers of proof by the wife's testimony that August Skoglund had lived with the witness and her husband, and that he did in fact give Clyde certain property, were also rejected as incompetent, whereupon defendant rested. Verdict was directed for plaintiff. Defendant has appealed.

It is now virtually conceded by the plaintiff that the prohibition of the statute referred to in the objection does not apply to the wife of the defendant. There being no real estate involved, she does not have a direct legal interest in the result of the proceeding and the objection to her testimony for this reason was therefore without foundation in fact. It is equally clear, we think, that the defendant's testimony comes directly within the prohibition of such section, unless same was waived. The administrator called the defendant as his witness and asked him concerning the making of the note, which he admitted, and also asked him if he had paid the note, to which he replied in the negative. Defendant contends that plaintiff thereby

waived, under the statute, any objection to the admission of the defendant's conversation with his father. We do not think that the testimony elicited from the defendant waives the bar of the statute as to such conversation concerning an alleged destruction or renunciation of the note. No testimony was adduced by the administrator of any conversation with August Skoglund. The nonpayment of the note cannot be said to be a transaction. Defendant's evidence that he had not paid it was merely negative in character and showed an absence of a transaction. The only transaction touched upon by the plaintiff was the making of the note. This does not waive the bar to additional, other or different transactions or conversations occurring several months later. *In re Estate of Neckel,* 80 Neb. 123; *Dickenson v. Columbus State Bank,* 71 Neb. 260; *Bergfield v. Bergfield,* 124 Neb. 67.

We next consider the principal question presented by the record, to wit: Was the wife's testimony concerning the conversations with the said August Skoglund otherwise objectionable? Plaintiff insists that a release of liability of a maker of a negotiable instrument cannot be predicated on oral testimony; that a cancelation, to be effective, must be in writing unless the note is delivered up to the maker, and cites in support thereof section 62-804, Comp. St. 1929, as follows: "The holder may expressly renounce his rights against any party to the instrument before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon." Defendant contends that the section cited does not apply where the payee intentionally destroys the evidence of the indebtedness with the intention of canceling the obligation; relying upon section 62-801, Comp. St. 1929, as follows: "A negotiable instrument is discharged: First. By payment

in due course by or on behalf of the principal debtor; Second. By payment in due course by the party accommodated where the instrument is made or accepted for accommodation; Third. By the intentional cancelation thereof by the holder; Fourth. By any other act which will discharge a simple contract for the payment of money; Fifth. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

In support of his position, plaintiff cites *Pitt v. Little*, 58 Wash. 355; *Baldwin v. Daly*, 41 Wash. 416; *Whitcomb v. National Exchange Bank*, 123 Md. 612; *Leask v. Dew*, 184 N. Y. 599; *Portland Iron Works v. Siemens*, 135 Or. 219; *Kohn v. Zaludek*, 38 S. W. (2d) (Tex. Civ. App.) 110; *Ott v. Stone*, 225 Mo. App. 132; *Engle v. Brown*, 202 Mo. App. 345. These cases hold that under the uniform negotiable instruments act the third and fourth methods of discharging a negotiable instrument, as set out in our negotiable instruments act at section 62-801, above, are controlled by the provisions of section 62-804, above; that the word "renunciation" in the negotiable instruments act is used in the sense of release; that it not only describes the act of surrendering a right of claim without recompense, but that it also includes the relinquishment of a demand upon an agreement supported by a consideration, and that, in the absence of any written release or surrender of the note to the maker, the maker is not relieved from liability, even in those cases where accord and satisfaction are shown.

A review of the other decisions which have been brought to our attention discloses a rather long line of cases holding that the provisions of the negotiable instruments law, corresponding with the provisions appearing in section 62-804, above, providing that renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon, does not apply to a discharge of a note by novation, accord and satisfaction, or estoppel.

In *Gorin v. Wiley*, 215 Ill. App. 541, it was held that the renunciation section did not apply to a discharge by no-

vation. The court observes that this "section was undoubtedly intended to protect the innocent holder of a negotiable instrument from the necessity of meeting a defense of payment to or discharge by the original payee while the instrument was in his hands." To the same effect is *Nelson v. Hudson,* 221 Mo. App. 211.

In *Epstein v. Gradowitz,* 76 Cal. App. 29, it was held that the failure to surrender the instrument did not defeat an oral renunciation made for a valuable consideration, where the holder, as a part of the arrangement, promised to return the instrument to the maker, and there were not involved any rights of innocent third persons.

In *Bradley & Metcalf Co. v. McLaughlin,* 87 Okla. 34, the renunciation section was held not to apply to accord and satisfaction.

In *McGlynn v. Granstrom,* 169 Minn. 164, the court cites and disapproves the line of decisions first set out above, and says that the first section of the negotiable instruments act enumerates the methods whereby a negotiable instrument is discharged and "attaches that result to intentional cancelation or 'any other act which will discharge a simple contract for the payment of money.' " The court says further that "renunciation" of the one section of the statute is different from the "discharge" of the other section; that a writing was not an essential element to every discharge of a negotiable instrument of the law merchant, which it was sought to express and make uniform by the negotiable instruments act; that "it would be a radical as well as an impractical departure to make essential to any of the discharges * * * a written memorial of the transaction;" and says that under the discharge section "the cancelation of a negotiable instrument discharges it. Although it may well be in effect a renunciation of the maker's rights against all the parties and discharge them, it certainly need not be in writing. It may be by purposely burning the instrument or otherwise destroying it. *Henson v. Henson,* 151 Tenn. 137, 37 A. L. R. 1131."

In *Jones v. Wettlin,* 39 Wyo. 331, the court, after citing the line of cases cited by plaintiff and reviewing the origin of the section on renunciation, states that the negotiable instruments law adopted in the various states of this country is modeled after the British act, and that the only effect of the statute is that a renunciation, if in writing, is now valid in this country though made without consideration—citing Williston on Contracts, sec. 1833, with a note stating that the rule as laid down in *Baldwin v. Daly, supra,* is unsound. The court further states that a simple contract may, among other things, be discharged by novation and by accord and satisfaction, and this without writing or delivery of the instrument evidencing the previous indebtedness; that this was the rule of the law merchant and remains in force. The court says further: "Unless, therefore, the section on renunciation was intended to be read in connection with section 4052, *supra,* and was intended to control it, the methods of discharge under these sections must be considered as independent of each other, and as referring to different situations. * * * If the section on renunciation controls section 4052 when the discharge is by novation or accord and satisfaction, it would seem that it would control that section as well when the note is in fact paid by money, and this would seem to lead to the absurd result that payment cannot be shown, unless the fact thereof is in writing or unless the note or bill is delivered." To the same general effect are *Lockhart State Bank v. Baker,* 264 S. W. (Tex. Civ. App.) 566, and *Hall v. Wichita State Bank & Trust Co.,* 254 S. W. (Tex. Civ. App.) 1036. These cases are discussed in detail in *Henson v. Henson,* 151 Tenn. 137, from which we quote at length hereafter.

We find, then, some conflict in the authorities, with the better reasoned cases holding, with reference to the matters in them litigated, that the renunciation and discharge sections are independent of each other and refer to different situations and that "renunciation" as used in the negotiable instruments act refers to the formal and express

release of the common law. None of these cases, however, are cases in which is involved the effect of a voluntary destruction of a note by the payee, although it seems to be well settled, at least at common law, that the destruction by the donor of the evidence of indebtedness with the intention to make a gift to the debtor is sufficient forgiveness of the debt. See *Henson v. Henson, supra,* and cases therein cited on this point.

The only case called to our attention or that we have been able to discover in which the facts are substantially identical with those in the case at bar is *Henson v. Henson,* cited in *McGlynn v. Granstrom, supra.* In that case, plaintiffs purchased of W. R. Henson, the father of the plaintiff, L. A. Henson, several tracts of land, giving a series of notes therefor. The first note was paid, and later W. R. Henson died. Before his death he declared to members of his family and others his intention of forgiving the plaintiff's indebtedness, and in order to carry out his intention, he directed Mrs. Lulu Henson, wife of the defendant J. A. Henson, to burn said notes, which she did. Action was brought by the administrator of the estate of W. R. Henson for the collection of these notes. Defendants insisted that under the provisions of the negotiable instruments act the discharge or cancelation must be in writing in order to be effective. The court said:

"When the two sections above quoted are construed together, it is apparent that they are neither inconsistent nor in conflict. Section 119 provides five acts which constitute a discharge. Section 122 provides that a note may (also) be discharged by renunciation provided the renunciation is in writing. In the first section the legislature did not see proper to require that the discharge be in writing, while in the other section it did. It is unnecessary to discuss the reason for this distinction.

"In *Lockhart State Bank v. Baker,* 264 S. W. (Tex. Civ. App.) 566, this question was involved, and the court in its opinion said:

" 'The question, therefore, is whether subdivision 4, sec.

119, negotiable instruments act (article 6001-119), providing that a negotiable instrument may be discharged by any act which would discharge a simple contract for the payment of money, is limited or controlled by article 6001-122, relating to discharge of such instrument by express renunciation, and requiring it to be in writing. Appellant's contention has been recently decided adversely to it in the case of *Hall v. Wichita State Bank & Trust Co.*, 254 S. W. (Tex. Civ. App.) 1036, in a well-considered opinion by the Amarillo court of civil appeals, and in which a writ of error was refused by the supreme court November 12, 1923. We quote the following from this opinion:

" ' "From what has been said it seems apparent to us that it was the intention of the lawmakers by section 122 to deal with the formal and express release of the common law, and by the provisions of section 119, par. 4, to continue in effect other recognized methods of discharging obligations of this character. An express release is not necessary to a discharge by novation. The intention or agreement to accept the new obligation in lieu and discharge of the old may be implied."

" 'The method of discharging the note in suit in the *Hall v. Bank* case, *supra,* was by novation; while the discharge of the note in suit in the case at bar was by accord and satisfaction, and by equitable estoppel, or estoppel *in pais.* These methods of discharging simple contracts were recognized by the common-law and equity courts, and we are clear in the view that it was not the intention of the legislature to preclude these defenses by enacting article 6001-122, *supra.* It is evident that it was the intention of the legislature to incorporate in this article of the statute the common-law rules as announced by the text-writers and adjudicated cases of both England and America, which declared that a contract might be released by a formal instrument for that purpose without the necessity of showing a consideration therefor; or upon payment of a less consideration than provided in the contract and a surrender to the debtor of the instrument evi-

dencing the contract for cancelation; such was considered in law equivalent to a release in writing. See 1 C. J. 543, sec. 46, notes 8, 9, and 10, and cases there cited. * * *

" 'It is also clear to our minds that it was the intention of the legislature, in enacting article 6001-119, and the various subdivisions, *supra*, to incorporate in the statutory law other methods of discharging negotiable instruments, which had theretofore been declared by the common law to discharge a simple contract. Neither of these sections relate to, limit, or control the other, but relate to and control separate and entirely distinct matters. We therefore do not sustain appellant's contention that it was the intention of the legislature in enacting section 122, *supra*, to cover all character of discharge of negotiable instruments, and to preclude thereafter proof of any character of discharge by oral testimony.' "

The court then held that the destruction of the instrument constituted a cancelation and that the cancelation need not be in writing, and stated further that the payee, having intentionally destroyed the best evidence of the debt, will not be permitted to establish the same by secondary evidence and that the administrator stands upon no better ground than the trustee.

We agree with the conclusions reached by the Tennessee court, and the trend of the prevailing opinions interpreting the sections of the negotiable instruments law in question tends to support such holding. It follows then, under this view, that the rulings of the trial court excluding the wife's testimony were prejudicially erroneous.

The judgment of the trial court is hereby reversed and the cause is remanded.

REVERSED.