**Ewell C. MILLER, Appellant,**

*v.*

**Alton MILLER, Appellee.**

Court of Appeals of Kentucky.

Dec. 14, 1956.

J. P. Karem and Fred J. Karem, Louis-
ville, Basil W. Griffin, Jr., Bowling Green,
for appellant.

Joe B. Orr, Charles R. Bell, Bowling
Green, for appellee.

MOREMEN, Judge.

The complaint was filed for the purpose
of coercing payment of a cash loan and of
two promissory notes executed by appel-
lee, Alton Miller, to his brother, Ewell C.
Miller, appellant. Appellee confessed judg-
ment for the amount of the cash loan, but
pleaded that the two notes for a valuable
consideration had been marked "Paid" and
had been delivered to him. The trial re-
sulted in a verdict for appellee, Alton Mil-
ler, and, from the judgment thereon, this
appeal has been prosecuted.

Appellee's defense at the trial was based
on the premise that appellant had renounced
all rights under the notes, that each of them
had been marked "Paid, November 28,
1950," and delivered to him. The reason
he assigned for such action was based on
this condition of fact: Appellee, Alton Mil-
ler, is the owner and operator of the Yel-
low Cab Company and the Bowling Green

Transit Company, both of Bowling Green. During the years 1941–47, his brother, appellant, Ewell C. Miller, was the owner and operator of one or more recapping establishments in the city of Louisville. Appellee testified, in effect, that his brother, appellant, conspired with him in obtaining tires and in recapping tires for him without certificates in violation of the law pertaining to the Office of Price Administration, that upon investigation by that office and in order to shield his brother, appellee took the responsibility for the illicit action with the result that he was fined $2,080 and was denied certificates for tires or recapping tires for a period of 11½ months with resultant detriment to his business. He insists the notes were delivered back to him by appellant as a result of an agreement whereby appellant settled with him for taking the responsibility for the OPA trouble and also in payment for other services which he had rendered to his brother. Howbeit, the description of the other services was rather sketchy.

Appellant explains the delivery of the notes by testifying that he redelivered the notes to the maker, appellee, Alton Miller, because Alton Miller was in the process of refinancing his transportation business and was attempting to borrow $30,000, but could not obtain the loan unless he could remove the notes from his financial statement, and that he delivered the notes to his brother to enable him to obtain the loan.

On this appeal, it is contended that the trial court should have directed a verdict in appellant's favor because the evidence discloses that the consideration for the cancellation of the notes, if they were cancelled, was illegal.

The argument presupposes that always there must be a valid consideration for the cancellation or renunciation of a note. This is not always true. KRS 356.119, which sets out the usual manner by which negotiable instruments may be discharged, and KRS 356.120, which sets out the manner by which a party secondarily liable may

be discharged, pertain to situations where some form of consideration would appear and the usual rules for the cancellation of a simple contract are applicable.

However, KRS 356.122, which is unique and apparently requires no consideration if its conditions are met, reads as follows:

"Renunciation of rights by holder. The holder may expressly renounce his rights against any party to the instrument before, at, or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

It is pointed out by Britton on Bills and Notes at page 1947 that the doctrine of renunciation in a legal system which has developed and adhered to the doctrine of consideration is indeed a strange growth on the body of the law. However, it is well to remember that the "Law Merchant," which developed out of international trade, is a composition of the rules of law and business conduct of many nations, and has become, more than any other branch of the law, international. Although these rules, in some instances, may seem strange to those who are versed in the principles of common law, the provisions of the Law Merchant have been accepted in the English common law for many generations.

A renunciation, that requires no consideration, may take two forms: (1) by written declaration to that effect without consideration; and (2) by surrender of the note to the obligor of the instrument, likewise without consideration.

It was pointed out in McGlynn v. Granstrom, 169 Minn. 164, 210 N.W. 892, that a failure to appreciate the history and

origin of this mutation on the law embodied in the doctrine of renunciation has caused a contrariety of opinion by our courts. But this court, in a scholarly opinion by Commissioner Drury, in Gannon v. Bronston, 246 Ky. 612, 55 S.W.2d 358, 86 A.L.R. 324, recognized and accepted the fact that under the negotiable instrument law an obligation under a note may be renounced by the holder upon surrender of the note without consideration. The question for decision there, however, was not the same as presented here, but the acceptance of the general doctrine is plain.

When we return to the facts of the instant case, we find that one or the other of the brothers has not found truth to be expedient because practically every statement made by one is controverted by the other. There is no doubt that the facts should have been submitted to the jury because of this dispute, but our big problem here is whether the instructions were sufficient to submit to the jury this question of renunciation.

The instructions read:

"1. The Court instructs the jury that if they believe from the evidence in this case that the two notes offered in evidence, one dated October 1st, 1948 for the amount of $4,729.73, and the other dated December 15th, 1947 for the amount of $4,000.00 were for a valuable consideration given and surrendered as satisfied to the defendant, Alton Miller, the maker thereof, then and in that event they should find a verdict in this case for the defendant insofar as the said two notes are concerned.

"2. The valuable consideration referred to in the above instruction and as there used means either a benefit accruing to the plaintiff or a loss or disadvantage sustained by the defendant, and the surrender and satisfaction of any claim which the defendant may have held against the plaintiff if any

such there was, would constitute in a law a valuable consideration such as above referred to; unless the jury believe from the evidence that the said two notes were only surrendered temporarily and for the temporary purposes and not as being satisfied and paid, in which last named event the jury should find a verdict for the plaintiff for the amount of the two notes referred to in the first instruction."

A reading of the instructions discloses that perhaps the court went a little further than was necessary because the instructions imply that a valuable consideration, however slight, is required before the surrender results in the discharge. We believe, however, that under the facts and under the instructions that the primary question was presented to the jury. That was whether the payee surrendered these notes to the obligor with the intention to deprive himself of all rights under them. The form of the instructions certainly presents that question. The form is not too good but any error in form favors the appellant—not the appellee—and we have concluded that appellant cannot seriously object under the circumstances because he was not prejudiced by requiring the jury to find more than it was necessary for them to find. The instructions are predicated upon a finding that the notes were "surrendered as satisfied to the defendant," and an additional finding that there must be a valuable consideration greatly favored the appellant instead of the appellee. Technically incorrect instructions are not grounds for reversal where the rights of the losing party are not prejudiced. In Maupin v. Baker, 302 Ky. 411, 194 S.W.2d 991, 993, we said:

"An error in a court's instructions must appear to have been prejudicial to the appellant's substantial rights or to have affected the merits of the case or to have misled the jury or to have brought about an unjust verdict in order to constitute sufficient ground for

reversal of the judgment. See Stanley's instructions to Juries, Sec. 44, page 60."

 In any event, we feel that the action of both parties has been tainted with illegality and we, as certainly did the jury, believe that the courts should not aid them in getting their house in order. The rule deducible from many adjudications of this court is that any conduct or contract of an illegal, vicious or immoral nature cannot be the proper basis for a legal or equitable proceeding. Inevitably the parties are left in a dilemma which they themselves have devised. Robenson v. Yann, 224 Ky. 56, 5 S.W.2d 271.

Judgment affirmed.